UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TONYA YVETTE ALLEN,

          Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.
_____

<u>DECISION AND ORDER</u>

18-CV-6168L

**PRELIMINARY STATEMENT**

  Plaintiff Tonya Yvette Allen ("Allen") appeals from a denial of her application for Supplemental Security Income ("SSI") by the Commissioner of Social Security (the "Commissioner"). The action is one brought pursuant to 42 U.S.C. § 405(g) to review the Commissioner's final determination.

  On April 16, 2014, Allen filed an application for SSI, alleging an inability to work since March 13, 2013. (Tr. 170-75).[1] On June 5, 2014, the Social Security Administration denied Allen's application, finding that she was not disabled. (Tr. 91-97). Allen requested and was granted a hearing before an administrative law judge. (Tr. 100-12). Administrative Law Judge John P. Ramos (the "ALJ") conducted the hearing on August 9, 2016. (Tr. 59-82). In a decision dated August 29, 2016, the ALJ found that Allen was not disabled and was not entitled to SSI. (Tr. 10-19). On January 4, 2018, the Appeals Council denied Allen's request for a review of the

---

[1] References to page numbers in the Administrative Transcript (Dkt. # 9) utilize the internal Bates-stamped pagination assigned by the parties.

ALJ's decision, making the Commissioner's decision final. (Tr. 1-6). Allen then commenced this action on February 27, 2018, seeking review of the Commissioner's decision. (Dkt. # 1).

Currently pending before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. ## 10, 12). For the reasons set forth below, Allen's motion (Dkt. # 10) is granted to the extent that this the matter is remanded for further proceedings consistent with this decision, and the Commissioner's cross motion (Dkt. # 12) is denied.

## DISCUSSION

### I. Relevant Standards

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *see also* 20 C.F.R. §§ 404.1520, 416.920. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

### II. The ALJ's Decision

Here, the ALJ found that Allen had the severe impairment of chronic obstructive pulmonary disease ("COPD"). (Tr. 12). The ALJ then determined that Allen retained the residual functional capacity ("RFC") to perform the full range of sedentary work. (Tr. 13). Using Medical Vocational Rule 201.18 as a framework, and based on Allen's RFC, age, education and work experience, the ALJ concluded that Allen was not disabled. (Tr. 15).

### III. Analysis

#### A. Treating Physician Rule

Allen argues that the ALJ's decision that she is not disabled is not supported by substantial evidence and is the product of legal error. (Dkt. ## 10, 13). Specifically, among her several challenges, Allen contends that the ALJ failed to apply the treating physician rule when evaluating the July 11, 2016, pulmonary/physical medical source opinion of her treating primary care physician, Dr. Marc S. Lavender ("Lavender"), a doctor at East Ridge Family Medicine in Rochester, New York. (Dkt. ## 10-1 at 9-15; 13 at 1-4).

Under the treating physician rule that was applicable at the time the ALJ's decision was rendered,[2] the opinion of a claimant's treating physician is entitled to controlling weight as long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(2)). However, an opinion need not be given controlling weight if it conflicts with "other substantial evidence in the record," *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004), since "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

In determining what weight to give a treating physician's opinion, the ALJ must consider: (1) the length, nature, and extent of the treating relationship; (2) the supportability of the physician's opinion; (3) the consistency of the physician's opinion with the record as a whole; (4) the specialization of the physician; and (5) any other factors which support or contradict the

---
[2] Changes to the Social Security Administration's regulations regarding the consideration of opinion evidence will eliminate application of the "treating physician rule" for claims filed on or after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5848-49 (Jan. 18, 2017); *see also* 20 C.F.R. §§ 404.1520c, 416.920c. For purposes of this appeal, however, the prior version of the regulations applies. *See, e.g.*, *Colon Medina v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 295, 301 (W.D.N.Y. 2018) ("[b]ecause [p]laintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule").

medical opinion.  20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).  *See also Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).  In addition, the ALJ must articulate "good reasons" for assigning the weight that he does accord to a treating physician's opinion.  *See Shaw*, 221 F.3d at 134; *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("[f]ailure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand") (quotations omitted).  An ALJ's failure to apply these factors and provide reasons for the weight given to the treating physician's report is reversible error.  *See Snell*, 177 F.3d at 134; *see also Olczak v. Comm'r of Soc. Sec.*, 2019 WL 3891579, *2 (W.D.N.Y. 2019) ("[o]ur circuit has consistently instructed that the failure to provide good reasons for not crediting the opinion of a plaintiff's treating physician is a ground for remand").

In his medical source opinion, Lavender indicated that he began treating Allen in January 2010, saw her around two times per year since then, and noted that Allen's diagnoses were chronic pelvic pain and COPD.  (Tr. 379).  He identified Allen's symptoms as shortness of breath, chest tightness, wheezing, episodic acute bronchitis, and coughing, and opined that, during a typical workday, these symptoms would "occasionally" be severe enough to interfere with attention and concentration needed to perform even simple work tasks.  (*Id.*).  When asked to "[i]dentify the clinical findings, laboratory and pulmonary functions test results that show[ed] [Allen's] medical impairments," Lavender wrote "[a]ttached."  (*Id.*).[3]

---

[3] Although there are no medical records attached to Lavender's opinion (which is exhibit 8F in the transcript), it is clear from the Court's review that exhibit 7F (Tr. 362-77) consists of the records Lavender "attached" to his opinion. At the top of each of the pages in exhibits 7F and 8F, the same date stamp appears (July 11, 2016, the same date Lavender completed his opinion), as does a time stamp that presumably indicates the records were all accessed within a four-minute timeframe of each other.  In addition, although difficult to decipher, it appears that exhibits 7F and 8F are a part of the same 22-page record that Lavender compiled on July 11, 2016.  Indeed, Allen represents that exhibit 7F contains the "attached" records referenced in Lavender's opinion (Dkt. # 10-1 at 11), and the Commissioner does not dispute that representation (Dkt. # 12-1 at 13).

In terms of functional limitations resulting from Allen's impairments, Lavender opined that Allen could walk about one half of a city block before needing to rest or experiencing severe pain "due to shortness of breath," but that she could sit for more than two hours at one time before needing to get up, and could stand for more than two hours at one time before needing to sit down or walk around. (Tr. 379-80). Lavender also opined that Allen could stand/walk for less than two hours, and could sit for at least six hours, in total during an eight-hour work day. (Tr. 380). He further indicated that Allen could only occasionally lift and carry less than ten pounds in a competitive work situation, could never lift or carry twenty or fifty pounds, and could frequently twist, occasionally stoop/bend and crouch/squat, and rarely climb stairs or ladders. (*Id.*).

Lavender also opined that Allen had environmental restrictions. He noted that Allen should avoid all exposure to extreme cold and heat, high humidity, cigarette smoke, perfumes, soldering fluxes, solvents/cleaners, fumes, odors, gases, dust, and chemicals, and should avoid concentrated exposure to wetness. (Tr. 381). Based on Allen's impairments and related treatment, Lavender opined that Allen would likely be absent from work about four days per month. (*Id.*).

The ALJ noted most of these limitations in his review of Lavender's opinion, but afforded it "little weight," instead choosing to give "significant weight" to the May 30, 2014, opinion of consultative examiner Dr. Aharon Wolf ("Wolf"). (Tr. 14).[4] In discounting Lavender's opinion, the ALJ explained – in one sentence – that the "limitations [opined by Lavender] lack[ed] adequate narrative explanation with reference to clinical and diagnostic findings, as this evidence is merely a checkbox of limitations with no subsequent medical analysis." (Tr. 14).

While it is true that Lavender's opinion was rendered on a form that required him to check or circle certain limitations without asking him to provide a corresponding written explanation, it

---

[4] Wolf opined that Allen had "moderate to marked limitations for activities requiring exertion due to COPD." (Tr. 323).

5

does not necessarily follow that his opinion lacked support otherwise available from the medical record, or that the style of the form, alone, warranted discounting Lavender's opinion. *See Merritt v. Comm'r of Soc. Sec.*, 2016 WL 6246436, *8 (W.D.N.Y. 2016) ("[n]otwithstanding the lack of narrative on the check-box form, the ALJ was still required to consider the opinion"); *see also Garcia Medina v. Comm'r of Soc. Sec.*, 2019 WL 1230081, *4 (W.D.N.Y. 2019) ("[i]n the context of a busy treating physician who has seen a claimant multiple times and who maintains office notes and test results to support the opinions expressed, the use of a checked box format is hardly surprising and certainly not disqualifying . . . just because an opinion comes in the form of check boxes does not render [it] unreliable"). Indeed, "[t]he usefulness of a checked box is a function of whether the opinion expressed is relevant to the determination of disability and what information the provider relied upon in deciding what box to 'check.'" *Chalk v. Berryhill*, 2017 WL 4386811, *12 (W.D.N.Y. 2017).

Here, in rendering his opinion, it is reasonable to presume that Lavender's treatment history with Allen influenced his opinion of Allen's functional limitations. The record demonstrates that Lavender had a lengthy treating relationship with Allen and contains both pulmonary test results and treatment notes from Lavender's examinations of Allen. Lavender attached to his medical source opinion five pulmonary test results from 2015 and 2016 – several of which indicated that Allen's lungs had "[m]oderate [o]bstruction" (*see* Tr. 363, 364, 367) – and multiple treatment notes demonstrating that Allen suffered from COPD. (Tr. 379, 362-77). The ALJ did not acknowledge the fact that these records were attached to Lavender's opinion and did not discuss any of the test results or treatment notes in detail in his discussion of Lavender's opinion. (Tr. 14).

The record also contains notes from Lavender's treatment of Allen besides those attached to his opinion, several of which seem to be consistent with Lavender's opinion. For example, on

6

February 23, 2015, Lavender noted that Allen was concerned about "lifting, carrying, [and] pushing anything more than 8-10 pounds (one gallon of milk)," and that she "fe[lt] limited by her breathing in general" and was "able to walk about ½ - 1 block before get[ting] short of breath and need[ing] to stop and rest." (Tr. 330). Lavender also noted that Allen's COPD worsened "with cold weather." (*Id.*). Even though Allen's lungs showed normal results on physical examination, Lavender assessed her with moderate COPD. (Tr. 331).[5]

Furthermore, on July 28, 2015, Lavender opined that Allen's working diagnosis was "COPD exacerbation in the setting of moderately severe COPD." (Tr. 340). Lavender stated his concern over whether "there may be some other graduating factor to [Allen's] breathing difficulties especially in light of significant restrictive component to her spirometry," and that the "lack of improvement in spirometry may reflect the COPD exacerbation as opposed to lack of response to Spiriva." (*Id.*). While Allen's condition improved for her January 18, 2016, appointment with Lavender (Tr. 342-43), her condition seemed to have worsened by the time of her follow-up appointment on March 21, 2016. (Tr. 345 ("has been having difficulty breathing lately . . . getting short of breath with minimal activity")). A week later, her condition again improved with the help of medication. (Tr. 348-50). However, by July 1, 2016, Allen reported to Lavender that "walking even 100-150 feet require[d] her to sit and rest due to shortness of breath," which responded well to her rescue inhaler. (Tr. 368).[6]

---

[5] The only reference the ALJ made to Lavender's treatment notes is that Allen demonstrated "relatively normal" physical findings when she presented to Lavender (*see* Tr. 14 (citing Tr. 331, 340, 346)), and that, in February 2015, Allen had not seen Lavender in "over a year" (*see* Tr. 14 (citing Tr. 330)). This selective, cursory review of the treatment notes ignores pulmonary test results contained therein, as well as Allen's subjective complaints and Lavender's assessments and plans for treating Allen's COPD.

[6] The Commissioner argues that reasons existed to discount Lavender's opinion based on these treatment notes, such as that the record does not support the limitations opined by Lavender or that Allen's COPD improved with medication. (Dkt. # 12-1 at 13-15). However, the ALJ did not rely on any of these reasons in discounting Lavender's opinion. Therefore, the Court will not consider these *post hoc* rationalizations. *See, e.g.*, *Tuper v. Berryhill*, 2018 WL 4178269, *6 (W.D.N.Y. 2018) ("[t]o the extent the Commissioner's brief posits explanations [for the ALJ's decision

The Court is well-aware that the "Second Circuit has shared in the skepticism of check-box or fill in the blank forms that are unaccompanied by written reports or other objective medical evidence." *Rivera v. Berryhill*, 2018 WL 6522901, *12 n.11 (D. Conn. 2018) (collecting cases). However, based on the record detailed above, it is my view that Lavender's opinion was, in fact, accompanied by multiple treatment notes and objective test results, and that the ALJ failed to discuss this evidence in sufficient detail when evaluating how much weight to assign Lavender's opinion. Rather, the ALJ chose to discount Lavender's opinion because it was "merely a checkbox of limitations with no subsequent medical analysis." (Tr. 14).

Moreover, if the ALJ felt that Lavender's opinion lacked adequate narrative explanation, he should have retrieved additional information from Lavender regarding his assessed limitations, especially considering the length of the treating relationship Lavender had with Allen, and the rather significant limitations assessed by Lavender (such as that Allen would miss about four days per month due to her impairments or treatment). *See, e.g.*, *Garcia Medina*, 2019 WL 1230081 at *4 ("If the ALJ felt the form lacked sufficient narrative, he could have contacted [treating physician] and requested additional information. But trying to justify the rejection of [treating physician's] otherwise relevant opinion based on the form on which they were rendered was error."); *see also Czerniak v. Berryhill*, 2018 WL 3383410, *3 (W.D.N.Y. 2018); *Chalk*, 2017 WL 4386811, *13 (W.D.N.Y. 2017).

I therefore conclude that the ALJ's focus on the type of form used by Lavender, under the circumstances of this case, was error and did not constitute "good reasons" for discounting Lavender's opinion. *See, e.g.*, *Garcia Medina*, 2019 WL 1230081 at *3-4 (holding that ALJ's

---

to discount treating physician's opinion], it is well-settled that '[a] reviewing court may not accept appellate counsel's post hoc rationalizations for agency action'") (citing *Newbury v. Astrue*, 321 F. App'x 16, 18 (2d Cir. 2009) (summary order)).

assignment of "little weight" to treating physician opinion because it "consisted of largely 'checked-off responses' and was not accompanied by a 'detailed medical explanation' or treating notes" was not "sufficiently 'good [reasons]' to discredit the opinion of a treating physician who had evaluated plaintiff multiple times over the course of a several-year relationship"; "even though [treating physician's] opinion itself did not include detailed examination notes, the record as a whole did"); *Chalk*, 2017 WL 4386811 at *12-13 (ALJ improperly gave "little weight" to treating physician opinion based on the fact that "much of [treating physician's] opinions were expressed by 'merely a checkbox' without 'an adequate narrative explanation with reference to clinical and diagnostic findings"; "[t]he findings of each [appointment between claimant and treating physician] and test results are memorialized in narrative form and are part of the record[, and] those visits necessarily formed the basis of – and supported – [treating physician's] medical opinion").

## B. Remaining Contentions

Allen raises several other arguments she contends warrant remand in this case. As a result of my determination that remand is warranted because the ALJ erred in evaluating the opinion of Allen's treating physician, however, I decline to reach Allen's remaining contentions. *See, e.g.*, *Mojbel v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d 199, 204 (W.D.N.Y. 2019) (declining to reach claimant's remaining contentions where remand was warranted because ALJ improperly applied the treating physician rule); *Tuper*, 2018 WL 4178269 at *6 (same) (collecting cases).

## CONCLUSION

For the reasons set forth above, Allen's alternative motion for judgment on the pleadings (Dkt. #10) is granted, to the extent it seeks a remand for further proceedings and the

9

Commissioner's cross motion for judgment on the pleadings (Dkt. #12) is denied. The Commissioner's decision that Allen was not disabled is reversed, and the matter is remanded for further proceedings. Upon remand, the ALJ is instructed to give due consideration to the opinion of Allen's treating physician, Dr. Marc Lavender, with a reasoned application of the treating physician rule, the furnishing of good reasons for the weight afforded to the opinion, a discussion of how the ALJ's RFC determination accounts for the portions of the opinion that are credited, and an explanation for any portion that is not fully credited. The ALJ is further directed to obtain, as appropriate, clarifying information from Dr. Lavender as is necessary to reach a decision supported by substantial evidence.

    IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       October 4, 2019.